1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8
9

WILLIAM VERA, aka Memo Vera,

10

Plaintiff,

11

v.

12

WARDEN, et al.,

13

Defendants.

1:22-cv-00893-KES-CDB (PC)

**FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION FOR PLAINTIFF'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

(Doc. 61)

**14-DAY OBJECTION DEADLINE**

14
15
16
17

Plaintiff William Vera, *also known as* Memo Vera, is a state prisoner proceeding pro se and *in forma pauperis* in a civil rights action pursuant to 42 U.S.C. § 1983.

18

**I.      INTRODUCTION**

19
20
21
22
23

The Court issued its Order Regarding Plaintiff's First Amended Complaint on November 21, 2023. (Doc. 51.) The Court found Plaintiff's first amended complaint violated Rules 18 and 20 of the Federal Rules of Civil Procedure and the Court's prior screening order. (*Id.* at 4-8.) Plaintiff was granted "one final opportunity" to file an amended complaint curing the deficiencies identified in that order and in the Court's April 26, 2023, order. (*Id.* at 8-10.)

24
25

Following extensions of time, Plaintiff timely filed a second amended complaint on March 20, 2024. (Doc. 61.)

26

**II.     SCREENING REQUIREMENT**

27
28

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1

The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III.   PLEADING REQUIREMENTS

#### A.   Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

2

1  sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

2  liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

4      Section 1983 provides a cause of action for the violation of constitutional or other federal

5  rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

6  section 1983, a plaintiff must show a causal connection or link between the actions of the

7  defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

8  423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

9  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

10 act, participates in another's affirmative acts, or omits to perform an act which he is legal required

11 to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

12 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

14     Liability may not be imposed on supervisory personnel for the actions or omissions of

15 their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

16 *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

17 adduce evidence the named supervisory defendants "themselves acted or failed to act

18 unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

19 *C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

20 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

21 1983 there must be a showing of personal participation in the alleged rights deprivation: there is

22 no respondeat superior liability under section 1983").

23     Supervisors may be held liable only if they "participated in or directed the violations, or

24 knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

25 Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

26 'series of acts by others which the actor knows or reasonably should know would cause others to

27 inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

28 *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

1  inaction in the training and supervision of subordinates).

2       Supervisory liability may also exist without any personal participation if the official

3  implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

4  rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

5  F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

6  *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

7       To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

8  deprivation resulted from an official policy or custom established by a ... policymaker possessed

9  with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d

10  707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between

11  such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

12  *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

13  involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

14  *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

15       **IV.    DISCUSSION**

16            **A.  Plaintiff's Second Amended Complaint**

17       Plaintiff names as defendants Warden C. Pfeiffer,[1] Correctional Sergeant Felham,

18  Correctional Officers D. Hernandez, R. Mailing and J. Otto, Correctional Counselors T. Yoder

19  and Gerry, Psychologist K. B. Bowman, and "J. Doe," a member of the mental health staff, all

20  employed at Kern Valley State Prison (KVSP). (Doc. 61 at 1-3.) Plaintiff seeks compensatory and

21  punitive damages, a "declaration of rights violated under the U.S.C.,[2] preliminary and

---

[1] Plaintiff spells the warden's surname incorrectly, to wit: Pfiffer. (*See* Doc. 61 at 2.) The Court's prior screening order also corrected the spelling of Warden Pfeiffer's name. (*See* Doc. 51 at 5, n.1.)

[2] To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

4

permanent injunction for retaliations,"[3] costs of suit, and any other relief the Court deems just.[4] (*Id*. at 13.) Plaintiff attaches several documents to his second amended complaint, identified as Exhibit A, as follows: (1) a letter from the Board of Parole Hearings dated April 30, 2020 (*id*. at 16); (2) a letter from the Board of Parole Hearings dated February 2, 2021 (*id*. at 17); (3) a single-page, untitled document signed by "R. Godwin" and dated September 24, 2020, referencing allegations arising from an incident on August 14, 2020 (*id*. at 18); (4) an Inmate Appeal Assignment Notice dated February 28, 2020, concerning appeal log number CSPC-5-19-05169 (*id*. at 19); (5) an undated CDCR 22 form prepared by Plaintiff and addressed to "Corcoran VIP Education" (*id*. at 20); (6) documentation regarding Plaintiff's educational coursework between 2011 and 2020 (*id*. at 21-24); (7) a Board of Parole Hearings Consultation dated in August 2020 (*id*. at 25); (8) a single-page untitled document regarding Plaintiff's follow-up appointments and chronos (*id*. at 26); (9) CDCR Health Care Services Request forms dated in February and March 2020, accompanied by an inmate priority pass in Plaintiff's name (*id*. at 27); (10) a single-page untitled document including definitions and types of accommodations related to Board of Parole Hearings forms (*id*. at 28); (11) a KVSP Health Care Services form dated February 20, 2020, signed by "MLaufik, MD" (*id*. at 29); (12) a CDCR 22 form dated April 15, 2020 (*id*. at 30); (13) an undated, Spanish language letter from the Prison Law Office to Plaintiff (*id*. at 31); (14) Plaintiff's handwritten correspondence, dated May 11, 2020, to Clark Kelso, Federal Receiver (*id*. at 32-34); and (15) four untitled pages of what is presumed to be Plaintiff's mail log (*id*. at 35-38).

//

//

---

[3] Plaintiff filed a motion for temporary restraining order on November 22, 2023 (Doc. 52) and a motion for preliminary injunction on November 29, 2023 (Doc. 53). The undersigned issued Findings and Recommendations to deny both motions on April 10, 2024. (Doc. 62.) Following an extension of time, Plaintiff objections are due on or before June 24, 2024. (*See* Doc. 64.)

[4] Plaintiff also seeks the appointment of counsel. (Doc. 61 at 13.) A plaintiff does not have a constitutional right to appointed counsel in a section 1983 action. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), rev'd in part on other grounds, 154 F.3d 952, 954 n.1 (9th Cir. 1998). Plaintiff may file a motion seeking the appointment of counsel and should familiarize himself with the legal standards addressed in *Rand* before doing so.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.  Plaintiff's Claims

The Court quotes the supporting facts for Plaintiff's claim verbatim before discussing the claims.

<u>Claim One</u>

In his first claim for relief, Plaintiff states the following civil right has been violated: "*Actio Stricti Juris* Protected Liberty Interest Right to Petition the Government for Redress of Grievances; Torture 14th Amend. 28 U.S.C. § 1985." (Doc. 61 at 3.) As supporting facts for this claim, Plaintiff states as follows:

> Your Honor Christopher D. Baker, Plaintiff is Develomental Disable wheelchar bound State Prisoner; with a language Barrier[5], untrained in the Law proceeding *In Autry Droid*; wishes to bifurcate the Complaints; for the Court to retain Jurisdiction over K.V.S.P. Defendants, on the present Complaint, futher humbly request your Honor that when you expedite a ruling on this cause of action, to provide Plaintiff a separate Civil Rights Complaint for S.V.S.P. Defendants.

> I.P. incurred Due Process Infractions for the B.P.H. Hearing, Olson review, Qualified readers, Spanish interpreters, Interview with Def's T. Yoder, Kimbrell[], Gerry, suffered *Injury the Fact*, invation of legal protected interest (a) concreate and particularized (b) eminent not conjetural or hipothetical there is a casual Conection betheen the injury and the misconducts complaint of is traceable to the challenge Action of Def's and not the result of independent action. EXIBIT pag 15-25. [¶] *U.S. v. Bohn 890 F.2d 1079*.

> On about 8/14/2020 Def's c/o J. Otto and D. Hernandez attempted to perpetrate an Entrapment, made a 3" inches slash on I.P. forearm with the restrains, I.P. bleed all day, stopped the bleeding himself.

> I.P taped the laceration closed with masking tape c/o J. Otto was making the Security Check, in order to deny H.C. Agent Marsh from the Bakersfield internal Affairs Office took pictures of the injuries. EXIBIT pag 17.

> > Petitioner raises additional Due Process Claims relating to denial of access to records, notice opportunity to be present and be heard. *Vera v. Gipson 2013 U.S. Dist. Lexis 99275. 18 U.S.C.S. § 1029. U.S. v. Bohn 890 F.2d 1079.*

> Intervention in Areas commited within the Fed. Government branches thus in terms of Art. III limitations or Federal jurisdiction,

---

[5] In 2003, in *Vera v. Tulare Co. Sheriff's Dept., et al*., this Court stated: "Plaintiff has shown no lack of facility with the English language when complaining about the administration of his lawsuit." (*See* Case No. 1:98-cv-05265-OWW-LJO, Doc. 218 at 4.) *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases").

6

the question of "Standing" is relevant to whether ther the dispute sought to be adjudicated will be in the Liberty protections interest. *Cal. Cost. Art. 1 § 3.*

The Acts of Def's individually and in concert were malicious intentionally designed to deprive relief; "intentionally discriminatory, Plaintiff resorted to the Warden, Agencies, Assembly, Senate, Ker Co Sup. Ct., ect however neither took any measures against the Heinous, arbitrary acts suffered by I.P., who is a Class of one, individual status wich erects barriers within the reflections of Equal Protections Law presented in diametrically opposed to evenhandedly punishment for similar situated, on the same terms locally applicable to encarcerated persons in California. 42 U.S.C.S. § 1985, 18 U.S.C.S. § 1968 EXIBIT p. 35-38. *Castillo v. Colvin 2016 U.S. Dist Lexis 137180, In re San Vicente Medical Partners Ltd. 866 F.2d 1128*

I.P further demonstrate Supervisory liability existed without any personal participation if the Officials implemented "a Policy so deficient that the Policy itself is a repudiation to Constitutional rights and is the moving force.

(Doc. 61 at 3-6.)[6]

<u>Claim Two</u>

In his second claim for relief, Plaintiff states the following civil right has been violated:

"Deprivation of Civil Rights, Intentional Arbitrary and Discriminatory Equal Protections, Torture, Fraud 42 USC § 1983, FRCP 8, 38, 28 USC § 1343(a)(3), 18 USCS § 371, 17 CFR 240.10(b)."

(Doc. 61 at 3.) As supporting facts for this claim, Plaintiff states as follows:

On or about Feb 7, 2020* [*others were allowed to attend] C.D.C Officials at Corcoran S.P denied access to a Board of Parole Hearing, On Feb 11, 2020 Inmate Patient was transfer by c/o F. Mariscal, c/o Guizar, Once at the Releasing and Receiving Office, Sgt J. Bourne, Transportation Off. S. Smith and others abducted IP by forcefull means to K.V.S.P, where a Sgt J Flores in retaliation for having filed a different Complaint 22-56150 orquestrated or enacted a vicious attack upon IP, and place him in Ad Seg pag 26

Sgt. Felhman in the furtherance of a Conspiratory alliance with: Defendant c/o R. Mailing and K.B, subjected I.P. to Torture, Starvation isolation 24/7 in a cell with dim light, scarce water, and no type of service close to a year 18 USCS § 1201, 28 USC § 1350, C.C.R § 3333 EXIBIT 30 Griviance #108538

I.P. a member of the Clark Class sought relief under the Clark Remedial Plan, specifically "Policy," Communication, interpersonal skills, use of resources, self direction and or fuctional skills due to

---

[6] Plaintiff identifies "Kimbrell" as a defendant in this case. However, Plaintiff did not name "Kimbrell" as a defendant in this action. (*See* Doc. 61 at 1-3.)

Cognitive adaptive deficits, wich applies on a case by case basis for an upcoming B.P.H Hearing EXIBIT.27-28

I.P. was severely injure at the time, to with multiple broken ribs EXIBIT [blank spaces] and sought help through the Mental Health Dpt. because Defendants in the C.R.C. 22-56150 c/o Baker, c/o Power c/o Quinones, M. Gonzalez, T. Yoder, S. Ballesteros who worked in that Ad.Seg. were subjecting I.P to Tortous conditions isolation 24/7 in a dimly lit room with iether scarce dripping water no type of program, activity, legal resources, services or human contact EXIBIT. 30 28 USC § 1350 pursuant to C.C.R § 3333 at the time only the MH Dept or the warden C. Pfiffer could authorize this Torture practice beyond 10 days [¶] *Disability Rights v. Bautista, 930 F3d 1090.*

The District Court has subject Jurisdiction under A.T.S racial discrimination, Antisemitism, *Jus Cogens*, Int. Law *Sara v. Rio Tinto DLC. 550 F3d 822, 2008 US. App. Lexis 25279.*

The Central purpose of the initial contacts (interviews) with Psich thech Molina and others, was to obtain help with B.P.H. *Exempli Gratia*; Interview, idetify needs provide reasonable, access to Forms, regulation, procedures, understand to the best of his ability the process.

Defendant K.B. Bowman in lieu of assisting I.P with the disparities and or his discapacity obstructed his access to resources, and futher stiffle his ability to present his case, (Evidentiary Documentation Denial of Education by C.D.C.) EXIBIT pag. 18-24

Attorney Margot Mendelson from P.L.O advise I.P was legally entitled for assistance from MH for his Develomental Disabilities and the atrocious conditions of confinement EXIBIT pag 31.

Def. K.B. Bowman assumed the pocition of mocking and degrating I.P. advertising Correctionals retaliations Def. K.B. Bowman couple with CCI Gerry fabricated I.P. has an AA College Degree and disseminated this fraudulent data in the C.D.C. coputer thecnologies systems 18 USCS § 1030 C.F.A.A.

Def. K.B. Bowman defraud the A.D.A Reasonable Accommodation Panel, the Plan, sophistication involve the inducement or assuming control over Jane Doe 3rd party in the Fraudulent squeme Def. prohibit the Spanish speaking Psych thecs to communicate with I.P. who has a 3.3 G.P.L.

And this spurious documentation has had, continues to have, significant prejudicial impact on I.P's Due Process Administrative Safeguards, Medical, MH, Dental, communications and or 1st. Amend. Rights this device scheme to defraud, had the sole purpose to silence IP. due to the kidnapping, Torture and retaliatory Acts

It is unlawful to use any cruel corporal or unusual punishment or to inflict any treatment or allow any lack of treatment Medical Care wich will injure, impair the Health of a Person

confined *Ashker v. Governor of Ca N.D. Cal. 409.cv.057. 05796 S.B. 733(d)(1)(3)(4)(12)(13)(15)*

I.P. Developmental Disability derives from a T.B.I inflicted by Tulare Co. Sheriff's Off (1997), Gunshot by Correctionals (2014) Traumas, Isolation, Callous Indifference to I.P prognosis

In the well enunciated statutory Guidelines defined within the letter written to the Fed Receiver it reflects the Clinical Pathways, interdiciplinary, tools, organization of Care process for well designated group of patients with predicable Clinical course whence the this case embodies the Due Process Clause EXIBIT 32-34 "excerpts from SATF Z 20 04108 griviance

On March 10, 2020 K.B. Bowman performed a Counterfeit evaluation *In Absentia* due to Def c/o R. Mailing arbitrarily denied access to such consultation.

Action wich incidentally resulted in curtailing ungoing care, and significantly impacted I.P. fuctioning, long term prognosis wich is expected to last permanently.

On the other hand the "Culpable State of Mind" of Def. K.B. Bowman is explicitly predicated; by her, …contravening the processes governed by the Clark Rem. Plan, mandated for examinations i.e. Tony 3d. 1 phase 1(b), 2 Phase II, 3 Phase III, GAMA, WAIS B, WAIS III a), adaptive, Deficit, Communication, Skills[4], Socialization, Skills[5]), Self Advocacy, use of sources[8], Self Direction.

K.B. Bowman and all Defendants mentioned in this Complain acted with "reckless disregard" [knew] I.P is a Medical high risk intern, and disregarded the excessive risk to his health and safety I.P. spent nights with chest pain, requesting Health Care, these facts explicitly drew an inference, that a substantial risk of harm existed, Staff added to the misconducts that Defendants were creating.

To meet the subjective standard Def's need not to know the precise nature of the risk, neither have to harbor purpose to harm or the harm will actually occur as long as Def's have actual knowledge of the risk.

To be held liable Defs must disregard a risk that was excessive or pose a risk of harm in the case at hand Def. K.B. Bowman, Jane Doe, c/o Gerry, T. Yoder were just pawns acting in concert participation within the Conspiratory scheme described heretofore by the 22-56150 case Def's wich corroborates the Casual Link betheen Def's and the claimed Constitutional Violations [¶] CCR T 15. § 3413(a)(1)(2)(3)(5)(6)(A)12(B)(C)(D)(G)

Historically "the Law is thought to be predicated upon 2 factors *Mens rea* and *Actus reus* wich literally means: "*evil mind*" and "*bad faith*," respectively, balancing factors on wich the Law is predicated. *66 NCL Rev. 283 (1988)*

9

Def's Jhon Does (CDC. Doctors) have unreasonably deferred to this Clinical Opinion, False Education indiciums *Per Fraudem* in the same means and manner without confering with I.P. in a Clinical setting thus exacerbating the Due Process concerns by the context of this case (FERA) [¶] 31 USCS § 3729, 31 USCS § 3730, 31 USCS § 3731, 31 USCS § 3732, 18 USCS § 1341, 18 USCS 1343, *U.S. v. French 494 Fed.Appx 734, Sanders v. Allison Engine Co 703 F3d 930, Publius v. Boyer Vine 237 F.Supp.3d 997.*

Even up to date I.P. continues to be denied proper treatment Defendant E. Momen, has engaged into counterfeiting BWC Body worn camera videos with c/o [blank spaces] while denying MH care has also not performed, the statutory Guidelined assesments or evaluation C.R.P. supra, grivances K.V.S.P. HC 23000128, K.V.S.P. HC 2200039, K.V.S.P. 22001095.

Due, that the C.D.C., Doctors have adamantly denied Health Care, the small bump that, once was diagnosed as a Cyst, has develop into large occipal mass/(tumor)

Thereby contributing to the exsacerbation of I.P pathology overall fuction impairment vision, audiology, Cognitive anomalies, the surgery has been pending, as well as tomographies for years.

In addition, due to the interruption of the Medical Transfer EXIBIT [blank space], I.P. has not been able to follow up on Rhematolgy, Neurology, Cardiology, Advance therapy, Ortho, E.N.T. Specialty, Nursing, Multiple Surgeries, previously programed and many other Clinical Process "just to mention" C.C.R. § 3375.1(a)(b)(1)(2)(3)(4)(6)(7) [¶] *Sanchez v. Ca. No. 19-7077. Moran v. Gonzalez 45 F3d 292, Bowoto v. Chevron Corp. 557 F.Supp.2d 1080, Hassen v. Sheikn Khalifa Bin Zayed al Nahban 2010 US. Dist Lexis 144819*

(Doc. 61 at 4, 7-12.)[7]

### C.  Analysis

#### Prior Screening Orders

This Court screened Plaintiff's original and first amended complaints. (*See* Docs. 41 & 51.) Both orders included the relevant screening and pleading requirements. (Doc. 41 at 2-4 & Doc. 51 at 3-4.) In its first screening order, the Court explained Plaintiff's "claims against three correctional officers, an interpreter and a social worker employed at SVSP are not before the Court, as those claims were dismissed at the time this action was transferred from the Northern

---

[7] Plaintiff identifies or appears to identify the following individuals as defendants in this claim: Mariscal, Guizar, Bourne, Flores, Baker, Power, Quinonez, Gonzalez, Ballesteros, Molina, and Momen. Nevertheless, Plaintiff did not name any of these individuals as a defendant in this action. (*See* Doc. 61 at 1-3.)

District." (Doc. 41 at 4.) The Court construed remaining claims to include Eighth Amendment

deliberate indifference to serious medicals needs and First Amendment retaliation, but found the

Eighth Amendment claim against Defendant Bowman, a KVSP employee, and Defendant

Villegas, employed at another facility, could not proceed in the same suit. (*Id*. at 5-11.) In that

same order, Plaintiff was cautioned that the Court's duty in screening a complaint did not require

it "to wade through exhibits." (*Id*. at 11.) Determining the complaint failed to state a claim upon

which relief could be granted, Plaintiff was granted leave to file an amended complaint to cure the

deficiencies identified in that order. (*Id*. at 12-13.)

   In its second screening order, the Court found "Plaintiff's first amended complaint names

individuals that were previously dismissed from this action by District Judge Edward M. Chen on

July 19, 2022, to wit: Salinas Valley State Prison ('SVSP') employees T. Leffler, R. Luna,

Picasso, Phillips and Valle. … Plaintiff may *not* reassert his claims against Leffler, Luna, Picasso,

Phillips and Valle, as those claim[s] were previously dismissed without leave to amend." (Doc. 51

at 4.) The Court again advised Plaintiff that "he may not bring his claims against KVSP

defendants and SVSP defendants in the same action if those claims are not related." (*Id*. at 5.) It

found Plaintiff had "failed to comply with the Court's previous screening order by continuing to

assert claims that do not arise out of the same transaction or occurrence or series of transactions

and occurrences in violation of Rules 18 and 20 …." (*Id*.) As a result, the Court elected not to

complete screening of the first amended complaint, and instead provided Plaintiff with a further

explanation about which claims he may bring in this action, and again addressed Plaintiff's

attempt to name additional plaintiffs. (*Id*. at 5-6.) Plaintiff was further advised that a majority of

his federal and state statutory references were not applicable in this action. (*Id*. at 6.) Noting

Plaintiff had been previously provided the legal standards applicable to Eighth Amendment

deliberate indifference to serious medical needs claims and First Amendment access to courts

claims, Plaintiff was thereafter provided with the legal standards applicable to Fourteenth

Amendment Procedural Due Process violations and Equal Protection claims. (*Id*. at 6-8.)

Ultimately, the Court found Plaintiff's first amended complaint violated Rules 18 and 20 of the

Federal Rules of Civil Procedure and the Court's prior screening order. (*Id*. at 8.) Plaintiff was

1  granted "**one final opportunity** to file an amended complaint curing the deficiencies" identified in

2  that order and the first screening order. (*Id.*, emphasis in original.)

3  <center>Rule 8 of the Federal Rules of Civil Procedure</center>

4        The Court previously has advised Plaintiff that a short and plain statement of his claim is

5  all that is required. (*See* Doc. 41 at 3 & Doc. 51 at 3.) He has also been advised that while detailed

6  factual allegations are not required, reciting the elements of a claim or cause of action, "supported

7  by mere conclusory statements, do not suffice." (*Id.*) Further, Plaintiff was previously advised

8  that while factual allegations are accepted as true at screening, "legal conclusions are not." (*Id.*)

9  Despite being so advised, Plaintiff's second amended complaint is often supported only by vague

10  and conclusory statements and includes numerous legal conclusions; the Court is not required to

11  accept either.

12        This Court has expended significant time screening Plaintiff's complaints. Despite the

13  Court's best efforts to construe Plaintiff's claims liberally, each complaint submitted has failed to

14  state any claim upon which relief could be granted.

15  <center>Construing the Claims in the Second Amended Complaint</center>

16        The Court construes Plaintiff's second amended complaint to present claims arising under

17  the Eighth Amendment for deliberate indifference to serious medical needs, the First Amendment

18  for access to courts and retaliation, and the due process and equal protection clauses of the

19  Fourteenth Amendment. Further, the Court presumes Plaintiff intended to assert those claims

20  against all named Defendants. This is so because despite being advised on two previous occasions

21  that he "must state what each named defendant did that led to the deprivation of [his]

22  constitutional rights" (*see* Doc. 41 at 12 & Doc. 51 at 8), Plaintiff continues to refer to individuals

23  referenced in his second amended complaint in a global sense. (*See, e.g.*, Doc. 61 at 5 ["Acts of

24  Def's"] & 10 ["and all Defendants mentioned"].)

25        Next, several individuals are referenced in Plaintiff's second amended complaint who

26  were not named as defendants in this action. (*See* notes 5 & 6, *ante*.) The Court will not

27  specifically address any claims concerning those individuals. Only parties properly named are

28  considered, to wit: Bowman, John and/or Jane Doe, Felham, Gerry, Hernandez, Mailing, Otto,

<center>12</center>

1    Pfeiffer, and Yoder.

2          Finally, the Court does not repeat the legal standards set forth in prior screening orders

3    applicable to Eighth Amendment deliberate indifference to serious medical needs claims, First

4    Amendment access to courts claims, or Fourteenth Amendment procedural due process claims in

5    its analysis. To the extent the legal standards applicable to other claims were not previously

6    provided in a screening order, those will be included in the Court's analysis.

7                    ***Eighth Amendment Deliberate Indifference to Serious Medical Needs***

8          Liberally construing the second amended complaint, Plaintiff fails to allege a plausible

9    deliberate indifferent to serious medical needs claim against any named defendant.

10         While Plaintiff meets the first prong of the deliberate indifference test by alleging he has a

11   traumatic brain injury and other ailments, Plaintiff fails to meet the second prong of the relevant

12   test. Plaintiff states "Bowman and all Defendants mentioned" in the complaint "acted with

13   'reckless disregard'" because they knew Plaintiff "is a Medical high risk intern, and disregarded

14   the excessive risk to his health and safety." (Doc. 61 at 10.) Plaintiff states he "spent nights with

15   chest pain, requesting Health Care, these facts explicity drew an inference, that a substantial risk

16   of harm existed …." (*Id*.) Plaintiff fails to assert any defendant knew Plaintiff was experiencing

17   chest pain or that he wanted to be seen by "Health Care." And simply stating he is "a Medical

18   high risk" does not reasonably infer liability on the part of any named defendant. *Iqbal*, 556 U.S.

19   at 678 ("sheer possibility that a defendant has acted unlawfully" is not sufficient to state a

20   cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short).

21   Plaintiff's claims against these individuals amount to bare recitations of the elements of a claim or

22   legal conclusions. *Id*.

23         And Plaintiff's claims against John or Jane Does, "CDC Doctors"—that they

24   "unreasonably deferred to [a] clinical opinion" or failed to confer with him "in a Clinical setting"

25   (*see* Doc. 61 at 11)—are similarly insufficient to state a claim. These allegations are vague and

26   conclusory. *Iqbal*, 556 U.S. at 678.

27                                  ***First Amendment Access to Courts***

28         Liberally construing the second amended complaint, Plaintiff fails to allege a First

1  Amendment access to courts claim against any named Defendant. Plaintiff once against fails to

2  clearly allege an actual injury or to identify an anticipated or lost underlying claim, and further

3  fails to establish that any such claim is nonfrivolous and arguable. *Christopher v. Harbury*, 536

4  U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 348-49 (1996); *Nev. Dep't of Corr. v.*

5  *Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).

6  <center>***First Amendment Retaliation***</center>

7  Plaintiff refers to "retaliation" in his second amended complaint. For example, Plaintiff

8  states "Sgt J. Flores in retaliation for having filed a different Complaint 22-56150" placed

9  Plaintiff in administrative segregation. (Doc. 61 at 4.)

10  Prisoners have a First Amendment right to file prison grievances and retaliation against

11  prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559,

12  566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1)

13  that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's

14  protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment

15  rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-

16  68. To prove the second element, retaliatory motive, a plaintiff must show that his protected

17  activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct.

18  *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or

19  circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not

20  sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v.*

21  *Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of

22  plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in

23  time between the protected conduct and the alleged retaliation; (2) defendant's expressed

24  opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for

25  the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

26  Liberally construing the second amended complaint, Plaintiff fails to allege a First

27  Amendment retaliation claim against any named Defendant because he fails to allege that his

28  placement in administrative segregation, or any other retaliatory conduct asserted, did not

<center>14</center>

1  reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

2  ***Fourteenth Amendment Due Process***

3          Liberally construing the second amended complaint and to the extent it can be understood

4  to present a due process claim concerning a Board of Parole Hearings proceeding, Plaintiff fails

5  to state a claim upon which relief can be granted.

6          The federal due process protections accorded to state prisoners at parole hearings are very

7  limited. As a threshold matter, "the States are under no duty to offer parole to their prisoners."

8  *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (citing *Greenholtz v. Inmates of Neb. Penal &*

9  *Corr. Complex*, 442 U.S. 1, 7 (1979)). If parole is offered, due process is satisfied when prisoners

10  are "allowed to speak at their parole hearings and to contest the evidence against them," "afforded

11  access to their records in advance," and "notified as to the reasons why parole was denied." *Id.*

12  Under *Swarthout*, the substance of the Board of Parole Hearings decision is not subject to federal

13  review: "[I]t is no federal concern...whether California's 'some evidence' rule of judicial review

14  (a procedure beyond what the Constitution demands) was correctly applied." *Id*. at 221. "[T]he

15  responsibility for assuring that the constitutionally adequate procedures governing California's

16  parole system are properly applied rests with California courts, and is no part of the Ninth

17  Circuit's business." *Id*. at 222.

18          Plaintiff's exhibits reveal his parole consultation of February 9, 2020, was postponed due

19  to a transfer. (Doc. 61 at 16.) Another of Plaintiff's exhibits reveals that a consultation "took

20  place on August 14, 2020" that Plaintiff "refused to attend." (*Id*. at 17.) Another exhibit that

21  includes only "Page 1 of 3" of a Board of Parole Hearings Consultation, states a consultation

22  occurred on August 14, 2020, and that Plaintiff was not present. (*Id*. at 25.) Notably, the findings

23  on this partial document indicate that the Board determined Plaintiff had "[n]o vocational training

24  to date," "[n]o work assignments in Ad. Seg.," and had "not completed any rehab programs." (*Id*.)

25          To the extent Plaintiff asserts that in February 2020 "C.D.C. Officials at Corcoran SP

26  denied [him] access to a Board of Parole Hearing" (Doc. 61 at 4), even accepting that fact as true

27  does not serve to state a claim against any named defendant in this action since all are employed

28  at KVSP. In other words, what may have occurred at Corcoran State Prison in February 2020 is of

15

no significance in this action.

Also, to the extent Plaintiff can be understood to allege he did not receive certain evaluations, reviews, or services at his Board of Parole Hearings proceeding held in August 2020, Plaintiff's own exhibit reveals those are things that "may" happen "before or after the hearings." (*See* Doc. 61 at 28.) The word "may" does not mean any of the items or proceedings listed was required to be performed.

Plaintiff alleges insufficient facts to establish that he was refused the ability to speak at his parole hearing—indeed, Plaintiff's exhibit reveals he refused to attend the August 2020 hearing, or to contest the evidence against him, that he was refused access to records in advance, or that he was not notified of the reasons why parole was denied.  One of Plaintiff's exhibits, although partial, gives reasons why parole was denied as noted above. *Swarthout*, 562 U.S. at 220. Further, to the extent Plaintiff's allegations here "necessarily implicate[] the validity of the denial of parole," including any assertion that the Board relied on false reports, a section 1983 action is not the proper vehicle to challenge the Board's decision; the proper vehicle for such a challenge is a petition for writ of habeas corpus. *See, e.g*., *Brown v. Shaffer*, No. 1:18-cv-00470-AWI-HBK (PC), 2021 WL 4441693, at *7 (E.D. Cal. Sept. 28, 2021) (recommending dismissal of due process claim following BPH proceeding and stating "claims that the Board relied on false information is … cognizable only in habeas"); *Molina v. Brown*, No. CIV S-11-3180 JAM CKD P, 2012 WL 1378498, at *3 (E.D. Cal. Apr. 19, 2012) ("insofar as plaintiff's claims concerning his August 2010 parole hearing 'necessarily implicate[ ] the validity of the denial of parole,' a § 1983 action is not the proper vehicle to challenge the Board's procedures and/or decision").

### *Fourteenth Amendment Equal Protection*

It appears Plaintiff is asserting an equal protection "class of one" violation. (*See* Doc. 61 at 5 ["I.P., who is a Class of one, individual status wich erects barriers within the reflections of Equal Protections Law …].) Where state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish an equal protection "class of one" claim by demonstrating that the state actor (1) intentionally (2) treated him differently than other similarly situated persons, (3) without a rational basis. *Gerhart v. Lake C'nty, Montana*, 637 F.3d 1013,

1022 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). A class of one plaintiff must show that the discriminatory treatment "was intentionally directed just at him, as opposed... to being an accident or a random act." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).

Liberally construing the second amended complaint, Plaintiff fails to allege an equal protection clause violation against any named defendant. He does not assert facts demonstrating that any individual intentionally treated him differently than other similarly situated persons in the absence of a rational basis. *Gerhart*, 637 F.3d at 1022. Plaintiff merely alleges elements of the claim in conclusory fashion and asserts a legal conclusion. Neither is sufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678.

<div align="center">Conspiracy Claims</div>

It appears Plaintiff also alleges a conspiracy among named Defendants. (*See, e.g*., Doc. 61 at 4 ["Felhman in the futherance of a Conspiratory alliance with …"], 8 ["Bowman couple with CCI Gerry fabricated …"] & 11 ["K.B. Bowman, Jane Doe, c/o Gerry, T. Yoder were just pawns acting in concert participation within the Conspiratory scheme described …"].)

In order to recover for conspiracy to deprive a individual of civil rights, a plaintiff is required to allege that the purpose of the conspiracy was to deprive plaintiff of equal protection, privileges and immunities, or to obstruct course of justice, that defendants intended to discriminate against plaintiff, that defendants acted under color of state law and authority, and that the acts done in furtherance of the conspiracy resulted in an injury to plaintiff's person or property or prevented him from exercising a right or privilege of a United States citizen. *See* 42 U.S.C. § 1985(3); *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974).

Conspiracy allegations must be more than mere conclusory statements. *Bonnette v. Dick*, No. 1:18-cv-0046-DAD-BAM, 2020 WL 3412733, at *4 (E.D. Cal. June 22, 2020) (citing *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1979)). A conspiracy claim brought under section 1983 requires proof of an agreement or meeting of the minds to violate constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). It also requires proof of an actual deprivation of constitutional right. *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v.*

<div align="center">17</div>

*Woodward C'nty, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)) (citation omitted).

"[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." *Twombly*, 550 U.S. at 557. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. "Allegations that identify 'the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose,' [] and allegations that identify 'which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights,' [] both have been held to be sufficiently particular to properly allege a conspiracy." *Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist.*, No. 1:10-CV-00166-AWI, 2010 WL 3154013, at *8 (E.D. Cal. Aug. 6, 2010) (citations omitted). Importantly, to "recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.* (quoting *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990)).

Even liberally construing the second amended complaint, Plaintiff fails to state a claim for conspiracy because he has not shown that he suffered an actual deprivation of his constitutional rights, as discussed herein. Furthermore, he fails to assert sufficient allegations to demonstrate the existence of an agreement or meeting of the minds between any of the named defendants. *Iqbal*, 556 U.S. at 678.

<div align="center">Conditions of Confinement</div>

Plaintiff's second amended complaint can also be liberally construed to assert Eighth Amendment conditions of confinement claims. For example, Plaintiff states he was subjected to "Torture, Starvation isolation 24/7 in a cell with dim light, scarce water, and no type of service for close to a year." (Doc. 61 at 4; *see also id.* at 7.)

The Eighth Amendment protects prisoners from inhumane methods of punishment and

<div align="center">18</div>

from inhumane conditions of confinement. *Farmer*, 511 U.S. at 832; *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference …." *Labatad v. Corrections Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. C'nty of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834.  Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837; *Anderson v. C'nty of Kern,* 45 F.3d 1310, 1313 (9th Cir. 1995). Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) [outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day] with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day]). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for

19

Eighth Amendment purposes. *Id.* Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.* Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d at 1314 (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

Subjectively, if an objective deprivation is shown, a plaintiff must show that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson*, 290 F.3d at 1188). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Liberally construing the second amended complaint, Plaintiff fails to allege sufficient facts to state a claim for relief against any named defendant. While Plaintiff appears to specifically name Defendants Bowman, Felhman, Mailing and Yoder, in this claim, he alleges insufficient facts to establish these officials acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 837. Plaintiff alleges insufficient facts to establish that any named defendant was aware that a substantial risk of serious harm to Plaintiff existed. He does not explain how he was allegedly tortured, starved, or isolated, or what services he was denied. Nor does he explain how "dim light" and "scarce water" were unreasonable or otherwise inadequate. Plaintiff's assertions are merely recitations of the elements of the claim or legal conclusions, none of which are sufficient. *Iqbal*, 556 U.S. at 678.

1

Fraudulent Reports

2

As Plaintiff has been previously advised, the creation of false evidence, standing alone, is

3 not actionable under section 1983. (*See* Doc. 41 at 8.) Therefore, to the extent Plaintiff intended

4 to assert a constitutional claim based upon Defendant Bowman's purportedly fraudulent report, he

5 fails to do so.

6

*Clark* Remedial Plan

7

To the extent Plaintiff relies upon being a member of the "Clark Class" and the "Clark

8 Remedial Plan" (*see, e.g.,* Doc. 61 at 7) to support his claims in the second amended complaint,

9 Plaintiff is advised the *Clark* Remedial Plan cannot be enforced through a section 1983 lawsuit.

10 Section 1983 provides a mechanism to sue state officials and employees for violation of rights

11 guaranteed by the federal Constitution or other federal law. 42 U.S.C. § 1983 (establishing

12 personal liability for deprivations of federal rights). A consent decree or remedial plan is not a

13 source of federal law that can be vindicated under the statute. *Green v. McKaskle*, 788 F.2d 1116,

14 1123-24 (5th Cir. 1986). An inmate seeking relief pursuant to the *Armstrong* or *Clark* remedial

15 plans[8] "must pursue his requests via the consent decree or through class counsel," *Crayton v.*

16 *Terhune*, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002), not by an

17 independent lawsuit. *See also Frost v. Symington*, 197 F.3d 348, 358-59 (9th Cir. 1999); *Hopkins*

18 *v. California*, No. 2:20-cv-2084 KJM AC, 2021 WL 6135925, at *3 (E.D. Cal. Dec. 29, 2021).

19

References to Criminal Statutes

20

Plaintiff has previously been advised that references to criminal statutes are inapplicable.

21 (Doc. 51 at 6.) Yet Plaintiff continues to reference criminal statutes in his second amended

22 complaint. For example, Plaintiff cites to "18 USCS § 371" at page 4. That statute is titled

23 "Conspiracy to commit offense or to defraud United States" and states:

24
25
26

> If two or more persons conspire either to commit any offense against
> the United States, or to defraud the United States, or any agency
> thereof in any manner or for any purpose, and one or more of such
> persons do any act to effect the object of the conspiracy, each shall

27
28

[8] The *Armstrong* and *Clark* cases are class actions brought against state officials for violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Constitution by present and future prisoners and parolees suffering from certain disabilities. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1062-63 (9th Cir. 2010); *Clark v. California*, 739 F. Supp. 2d 1168, 1173-74 (N.D. Cal. 2010).

be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 371. Plaintiff also references "18 USCS § 1201," "18 USCS § 1029," and "18 USCS § 1030." The first pertains to crime of kidnapping and the latter two to fraud. References to criminal statutes do not state a claim for relief in a section 1983 proceeding. *See Clinton v. Allison*, No. 3:23-cv-01471-CAB-SBC, 2024 WL 1859956, at *10 (S.D. Cal. Apr. 29, 2024) (discussing plaintiff's references to federal and state criminal statutes and finding "criminal statutes do not give rise to civil liability under section 1983"); *Jones v. C'nty of Sonoma*, No. 23-cv-02730-CRB, 2024 WL 1354496, at *4 (N.D. Cal. Mar. 29, 2024) (finding plaintiff "fails to state a claim under 18 U.S.C. § 1503 because the statute only applies to criminal cases and does not provide a civil cause of action"); *Bland v. Gross*, No. 1:20-cv-00542-DAD-BAM (PC), 2021 WL 120964, at *1 (E.D. Cal. Jan. 13, 2021) ("'Title 18 of the United States Code is a criminal statute and does not provide individual plaintiffs with a private cause of action.'") (quoting *Kennedy v. World Sav. Bank, FSB*, No. 14-cv-05516-JSC, 2015 WL 1814634, at *7 (N.D. Cal. Apr. 21, 2015)); *Rope v. Facebook, Inc.*, No. CV 14-4900 UA (FFM), 2015 WL 13918858, at *2 (C.D. Cal. Oct. 26, 2015) (same); *Loadholt v. Obama*, No. 2:13-cv-2607-MCE-EFB PS, 2015 WL 848549, at *3 (E.D. Cal. Feb. 26, 2015) (same).

<u>The California Code of Regulations</u>

Plaintiff makes numerous references to the California Code of Regulations in his second amended complaint. But a deprivation alleged to have arisen under a California Code of Regulation provision does not state a claim in a section 1983 action. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No.

22

1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred"); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (dismissing prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations).

### D.    Further Leave to Amend Should Not Be Granted

The undersigned acknowledges a pro se litigant's pleadings must be construed liberally. This Court's prior screening orders have done just that. Yet with every opportunity afforded to Plaintiff so that he might cure the deficiencies identified in his pleadings, Plaintiff fails to do so. Plaintiff's second amended complaint, like his previous complaints, is awash with legal conclusion and jargon, references to inapplicable criminal statutes, and is, simply stated, difficult to decipher. The Court has made every effort to ascertain the claims Plaintiff intended to assert and has done so here. Nevertheless, the Court concludes granting Plaintiff further leave to amend would be futile. "A district court may deny leave to amend when amendment would be futile." *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely").

### V.    CONCLUSION AND RECOMMENDATION

Based on the above, **IT IS HEREBY RECOMMENDED** that this action be dismissed, without leave to amend, based on Plaintiff's failure to state a claim upon which relief can be granted.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and

Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 10, 2024**

UNITED STATES MAGISTRATE JUDGE

24